
EOD
09/27/2019

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL O. PICKENS, | § | Case No. 16-40667 |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | |
| LINDA PAYNE, CHAPTER 7 TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 18-4038 |
| | § | |
| THOMAS D. BOWERS, III, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDERS

Linda Payne, the chapter 7 trustee, initiated this action against the defendant, Thomas D. Bowers, III, in which she seeks, among other things, a judgment avoiding and recovering an alleged transfer to Bowers in the total amount of $450,000 as preferential or fraudulent. Bowers seeks a summary judgment denying the chapter 7 trustee's claims. In addition, the chapter 7 trustee seeks a partial summary judgment on her claim that the alleged transfer to Bowers is avoidable as a preference. The Court exercises its core jurisdiction over this matter, *see* 28 U.S.C. §§ 157(b)(2)(F), (H) and 1334, and makes the following findings of fact and conclusions of law, *see* FED. R. BANKR. P. 7052.

### I.    SUMMARY JUDGMENT STANDARDS

The trustee and Bowers bring their motions for summary judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56, which provides: "The court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The way the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial. If, as with the trustee's motion, the burden of persuasion rests on the moving party, the moving party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If, as with Bowers' motion, the burden rests on the non-moving party, the moving party may satisfy its burden by submitting affirmative evidence that negates an essential element of the non-moving party's claim or by demonstrating to the Court that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim.@ *Celotex*, 477, U.S. at 322-323 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (internal citations omitted).

Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The nonmovant is required to go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). The non-moving party must cite to specific evidence demonstrating a genuine dispute. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

The Court always views the facts and evidence in the light most favorable to the non-moving party. *Ben-Levi v. Brown*, 136 S.Ct. 930, 930 (2016). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015).

In this case, the parties' cross-motions for summary judgment, their responses, and their replies establish the following body of uncontested facts.

## II.    UNCONTESTED FACTS

On October 31, 2014, Bowers entered into a written contingency fee agreement with Michael Pickens to represent Pickens in a Texas state court lawsuit against his father. On October 27, 2015, Pickens signed a new contingency fee agreement with Bowers and Bowers' co-counsel, Willie Gary. This new agreement superseded the prior agreement.

The October 27th fee agreement set the amount of the attorneys' fees at 40 percent if the case was resolved after filing suit but before appeal. Paragraph 2.01 provided Bowers and Gary would split the fee 50-50 if the case was not resolved within 90 days. In addition,

Paragraph 3.01 of the agreement contained the following assignment of interest: "In consideration of Attorney's services, the Clients hereby sell, convey and assign to the Attorney an interest to the Clients' claim and cause of action, and in any action, compromise, settlement, judgment, payment of services, profits or recovery thereon."[1] Paragraph 6.01 also provided that "all reasonable expenses incurred by the Attorney in the handling of this project shall be deducted from the gross amount of the settlement proceeds at the time the case is settled."

Paragraph 4.08 of the agreement granted Bowers and Gary a power of attorney to handle settlement discussions. Paragraph 4.08(a) stated that "this expressly includes the right to sign Clients' name" on any settlement check. In addition, Paragraph 4.08(b) stated:

> This limited power of attorney further authorizes the Attorney to place these monies … in the Attorney's trust account and from that trust account, make distributions and payment to the Attorney for the agreed to fee stated above, reimbursement to Attorney for any and all expenses incurred by the attorney in handling this case, payments to Clients of Clients' interest in the monies recovered and stated above, and payments to parties other than Clients and Attorney for their services performed, fees charged or bills rendered in connection with representing Clients, including but not limited to medical bills, court reporter fees, deposition fees, investigative services, costs of exhibits or other special expenses incurred by Attorney on behalf of Clients.

Paragraph 4.09 provided "no settlement of any kind shall be made for any of the aforesaid claims or profits of the Clients without the complete approval of the Clients."

On February 4, 2016, Pickens settled his claims against his father for $450,000. The settlement check was made out to Pickens and given to Bowers. Bowers signed Pickens' name to the check and deposited the settlement funds into his IOLTA (Interest on Lawyers Trust Account). Although Bowers asserts that fees and expenses far exceeded the

---

[1] The agreement (somewhat confusingly) defines "Clients" as Pickens and "Attorney" as Bowers and Gary.

**MEMORANDUM OPINION** **Page 4**

settlement amount, and he attached a list of his purported expenses to his motion for summary judgment, Bowers issued a check to Pickens for $148,628.18 on February 5, 2016.[2]

While Pickens' suit against his father was pending, Jack M. Thomas, M.D., was pursuing a lawsuit against Pickens, among others, in Texas state court. On December 9, 2014, Thomas obtained a default judgment against Pickens. The default judgment was in the principal amount of $120,000 plus interest, attorney's fees, and costs of court.

Thomas learned of the settlement between Pickens and his father at some point. Thomas promptly filed an application for turnover of the settlement proceeds in his state court case against Pickens. On February 8, 2016, the state court in the Thomas case signed a turnover order appointing a receiver and requiring Pickens to turn over "any money as a result of the settlement" of his suit against his father.

On February 9, 2016, Bowers issued a check for $112,500 to his co-counsel, Willie Gary, from the IOLTA. On the same day, he issued a check for $112,500 to himself from the IOLTA. In addition, on February 9, 2016, Bowers issued a $76,371.82 check to Radics Revocable Living Trust from the IOLTA, thereby completely depleting the settlement funds.

Pickens filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 8, 2016. This Court appointed Linda Payne as the chapter 7 trustee. The trustee retained special counsel to pursue claims for recovery of the funds Bowers, Gary and

---

[2] According to Bowers' affidavit in support of his motion for summary judgment, Pickens signed a settlement disbursement form on February 5, 2016, acknowledging that Bowens and Gary would receive $225,000 for their fees and costs, $76,371.82 would go to the Radics Revocable Living Trust, and Pickens would receive the balance. The trustee disputes the authenticity and trustworthiness of this document. The Court need not resolve this evidentiary dispute as the disbursement form is not necessary to the Court's analysis.

**MEMORANDUM OPINION** **Page 5**

Radics Revocable Living Trust received from the Pickens' settlement. The trustee subsequently settled her claims against Gary and Radics Revocable Living Trust, leaving only her claims against Bowers for this Court to decide.

According to the chapter 7 trustee, the bankruptcy estate was holding cash in the amount of $38,497.26 as of May 7, 2019. Creditors had filed priority claims in the amount of $81,312.94 and unsecured claims in the amount of $785,223.77. The trustee states in her declaration in support of summary judgment that Bowers, as an unsecured creditor, would have received no more than $38,497.26 in the chapter 7 proceeding.

### III. DISCUSSION

**A. The Cross-Motions for Summary Judgment on the Trustee's Preferential Transfer Claim**

Bankruptcy Code § 547 authorizes a trustee to avoid a debtor's pre-bankruptcy preferential transfers of property. To recover a preferential transfer under § 547(b), the trustee must prove:

> (1) a transfer of an interest of the debtor in property;
> (2) to or for the benefit of a creditor;
> (3) for or on account of antecedent debt;
> (4) made while the debtor was insolvent;
> (5) made on or within 90 days before the date of the filing of the bankruptcy petition; and
> (6) that enabled the creditor to receive more than it would otherwise have received if the transfer had not been made and the case had proceeded under Chapter 7.

*See* 11 U.S.C. § 547(b). *See also Union Bank v. Wolas*, 502 U.S. 151, 154–55 (1991). The trustee has the burden of proof to establish all elements of § 547(b) by a preponderance of the evidence. *See* 11 U.S.C. § 547(g).

### 1. Whether the Deposit of $450,000 Was A Transfer to Bowers

In this case, the trustee contends, and Bowers disputes, that the deposit of the $450,000 settlement check into Bowers' IOLTA was a "transfer" to Bowers of Pickens' interest in the funds.[3] The trustee argues that the power of attorney authorizing Bowers to sign the settlement check was improper because it was not notarized. Thus, the trustee argues that Bowers took control over the settlement funds by improperly signing the settlement check and that Bowers could have done anything with the funds after seizing control.

The trustee cites Texas statutes governing durable powers of attorney to support her argument that the power of attorney in the contingency fee agreement should have been notarized. Under Texas law, a durable power of attorney is one that expressly states it "is not affected by any subsequent disability or incapacity of the principal" or it "becomes effective on the disability or incapacity of the principal." TEX. EST. CODE § 751.0021. A durable power of attorney must be notarized, among other requirements. *See id.* However, powers of attorney may be either durable or non-durable under Texas law; durability is the exception, not the default rule. *See generally* 3 TEX. JUR. 3d Agency § 25 (Power of Attorney Relationship to Agency).

In this case, the power of attorney in the contingency fee agreement between Pickens and his attorneys does not purport to be durable, that is, to continue even in the

---

[3] Bowers argues, among other things, that the deposit of $450,000 was not a transfer of Pickens' interest in property, because "Bowers' expenses were never property of [Pickens]." Bowers appears to contend that his fees and expenses far exceeded the settlement amount, he had a contractual right to deduct his fees and expenses from the settlement under the fee agreement, and, therefore, Pickens had no legal right to receive any portion of the settlement. However, the phrasing of Bowers' argument confuses the issue before the Court. The issue under § 547(b) is not whether an expense was property of Pickens, but whether the trustee has established that Bowers' deposit of $450,000 into his IOLTA, or, alternatively, his payment of $112,500 to himself, were transfers of an interest of Pickens in property.

**MEMORANDUM OPINION**  **Page 7**

event of Pickens' death. In addition, the agreement expressly and repeatedly refers to the "limited" powers of attorney granted to Bowers and Gary. The trustee failed to show that Texas law generally requires notarization of a limited power of attorney in order to be effective; the trustee's reply brief does not cite any new authority but merely repeats her argument that Bowers acted improperly and seized control of the settlement funds. Based on the uncontested facts and relevant legal authorities, the Court finds and concludes that Bowers acted within the scope of his limited power of attorney by signing the settlement check he received from Pickens' father.

Moreover, Bowers did not treat the settlement funds as his own by, for example, depositing the funds into his operating account. Rather, he deposited the settlement funds into his IOLTA on Pickens' behalf as required by the fee agreement and applicable disciplinary rules. *See* TEX. R. DISC. PROC. 1.15(a) ("A lawyer shall hold funds and other property belonging in whole or in part to clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property."). *See also Coutee*, 984 F.2d at 141 n.4 ("Dominion and control means legal dominion and control."). The trustee has not established that the deposit of the funds into Bowers' IOLTA effected a seizure of the funds or a transfer of ownership as a matter of law. Indeed, various courts have held that funds held in an IOLTA on the date of bankruptcy are property of the debtor. *See, e.g., In re Sann*, 555 B.R. 721, 735–36 (Bankr. D. Mont. 2016), *aff'd,* 2017 WL 4678196 (D. Mont. Oct. 17, 2017), *dismissed,* 2018 WL 2372549 (9th Cir. Mar. 28, 2018) (action for turnover of funds disbursed from an IOLTA).[4]

---

[4] Section 541(a) of the Bankruptcy Code provides the "estate is comprised of all of the following property, wherever located and by whomever held: ... all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* The House and Senate Reports on the Bankruptcy Code indicate

**MEMORANDUM OPINION** **Page 8**

For all these reasons, the Court concludes that the trustee has failed to show that the deposit of $450,000 into Bowers' IOLTA trust was a "transfer" to Bowers. Thus, the trustee is not entitled to a summary judgment avoiding the deposit of the settlement check as a preferential transfer under § 547(b).

Even if the deposit were an avoidable transfer, Bowers argues that he was not a "transferee" from whom the entire $450,000 may be recovered under § 550 of the Bankruptcy Code. Bowers argues that he was a "mere conduit" with respect to the payments to Pickens, Gary, and Radics Revocable Living Trust. *See In re Goushey*, 2001 WL 2470029, * 1-2 (Bankr. E.D. Tex. June 17, 2001). The Fifth Circuit excludes "mere conduits" from the definition of "transferee." *Sec. First Nat'l Bank v. Brunson (In re Coutee)*, 984 F.2d 138, 140–41 (5th Cir. 1993). To be a transferee within the meaning of § 550(a), a recipient must gain "actual dominion and control over the funds" received from the debtor. *Id.* at 141. And to have dominion over funds, a recipient must have the right to use the funds as she sees fit. *Id.* at 141 n.3.

The settlement proceeds here were paid for the benefit of Bowers' client, not for the benefit of Bowers. Bowers did not have any interest in his client's claims against his father as discussed more fully below. The terms of the fee agreement did not provide Bowers with discretion as to how the settlement proceeds could be spent. Bowers was not free to "put the money to [its] own purposes," *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.),* 974 F.2d 712, 722 (6th Cir. 1992) (quoting *Bonded Financial Services Inc. v. European American Bank,* 838 F.2d 890, 893 (7th Cir. 1988)), and he could not have lawfully "invest[ed] the whole [amount] in lottery tickets or uranium

---

that § 541(a)(1)'s scope is broad. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05 (1983) (citing authority).

**MEMORANDUM OPINION** Page 9

stocks." *Sec. First Nat'l Bank v. Brunson (In re Coutee),* 984 F.2d 138, 141 (5th Cir. 1993) ("[A]n entity does not have dominion and control over the money until it is, in essence, 'free to invest the whole [amount] in lottery tickets or uranium stocks' if it wishes.") (quoting *Bonded,* 838 F.2d at 894). Rather, the contingency fee agreement and applicable disciplinary rules required Bowers to "disburse the funds in accordance with instructions from its client[ ]." *Lifecare Techs., Inc. v. Berman Law Firm, P.A. (In re Lifecare Techs., Inc.),* 305 B.R. 88, 92-93 (Bankr. M.D. Fla. 2003). Thus, because the trustee has not established that Bowers had sufficient dominion and control over the $450,000 settlement payment to be deemed a transferee, the Court agrees that Bowers would not be subject to liability for the deposit, if the deposit was avoided under § 550(a) of the Bankruptcy Code, as a matter of law, or for the payments to Pickens, Gary, and Radics Revocable Trust from the IOLTA. *See Coutee,* 984 F.2d at 141 (finding that law firm was not an initial transferee under § 550(a)(1) because the "firm's role with respect to the received money was to accept the funds in settlement of its client's case, deposit the money in trust [and] keep as fees what the [debtors] agreed to"); *Ducker v. Fairmeadows II (In re Bridges Enters., Inc.),* 62 B.R. 300, 303 (Bankr. S.D. Ohio 1986) (holding that attorneys who "served as the conduit to effect a settlement between the debtor and [creditor]" were not initial transferees within the meaning of § 550(a)(1)); *Gropper v. Unitrac (In re Fabric Buys of Jericho, Inc.),* 33 B.R. 334, 337 (Bankr. S.D.N.Y. 1983) (holding that law firm that accepted settlement check on behalf of client, deposited check into escrow account, and paid funds to client was mere conduit).

With respect to the $112,500 that Bowers transferred to himself from the IOLTA, Bowers appears to concede that he is a subsequent transferee of the funds. Section

550(b)(1) creates an affirmative defense to liability for a subsequent transferee who "takes for value … in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1). In this case, Bowers asserts that he did not act with any fraudulent intent, but he has not addressed his burden to establish the affirmative defense of § 550(b)(1). Instead, he argues that the transfer of $112,000 was not preferential, because the $112,500 belonged to him, not the debtor, under the terms of the fee agreement.

### 2. Whether the Payment of $112,500 to Bowers Was a Transfer of an interest of Pickens in Property

At a minimum, if the entire $450,000 deposit is not avoidable as a preference, the trustee seeks to avoid the transfer of $112,500 to Bowers as a payment made by Pickens to Bowers on account of an antecedent debt. Bowers contends, and the trustee disputes, that he owned this portion of a settlement as a result of the assignment clause in the contingency fee agreement.[5] Thus, according to Bowers, he did not receive a transfer of an interest of the *debtor* in property when he transferred $112,500 to himself from the IOLTA.[6]

For a contingency fee agreement to operate as an assignment of the underlying claim, "there must be in effect a constructive appropriation of so much of the amount to be recovered as will confer upon the attorney a complete and present right to receive the same without the further intervention of the client." *Carroll v. Hunt,* 168 S.W.2d 238, 241 (Tex. Comm'n App. 1943, opinion adopted). In *Carroll*, the agreement stated: "we agree to give you as compensation therefor ⅛ of the property recovered, such to be not less than $7,500

---

[5] The trustee attacks this contention because it seems to conflict with Bowers' argument that he was merely acting as a conduit with respect to the settlement funds. Bowers' briefing is not a model of clarity. However, parties may – and often do – advance alternative and even conflicting legal arguments during the course of litigation.

[6] Bowers also argues that the transfers could not have been fraudulent for the same reason. In order to avoid the challenged transfer as actually or constructively fraudulent under § 548 of the Bankruptcy Code, the trustee must first prove that Pickens had an interest in the property transferred.

**MEMORANDUM OPINION**     **Page 11**

in a fair valuation, to be paid in cash or kind as we may agree at the time of recovery." *Id*. at 239. The Texas Supreme Court held that this language did not evidence an assignment, because the client did not surrender control over funds or property but, instead, provided for a fair valuation and required a further agreement about whether the fee would be paid in cash or in kind. *Id.* Similarly, in *Dow Chemical Co. v. Benton,* 357 S.W.2d 565, 568 (Tex. 1962), the client agreed to "sell, transfer, assign and convey to my said attorneys the respective undivided interests in and to my said claim as set out above against the aforesaid parties and to any judgment or judgments that I may obtain or that may be rendered to me or my heirs and assigns." The Texas Supreme Court rejected counsel's argument that this language gave counsel an immediate, vested interest in the cause of action. *Id*. at 567.

Thus, in this case, the question for the court in examining the continency fee agreement is whether the language in the agreement created "a present interest in the cause of action" or merely "contemplated the future payment of a fee." *Carroll*, 168 S.W.2d at 241. On the one hand, the agreement between Pickens and Bowers does state that Pickens "hereby assigns" an interest in his claims to his attorneys. On the other hand, the agreement does not specify the scope of the assigned interest in Pickens' claims. The agreement also does not give counsel full control over the assigned claims; Paragraph 4.09 provides that "no settlement of any nature shall be made … without the complete approval" of both Pickens and his attorneys. And the agreement only allows the deduction of "reasonable" expenses from the settlement proceeds.

Although "a properly worded contingency fee contract may effect an assignment of part of [a] recovery and a part of [a] cause of action to [an] attorney," *Dow Chemical*, 357 S.W.2d at 568, the Court concludes that Bowers has not established that his agreement

**MEMORANDUM OPINION** Page 12

with Pickens did so as a matter of law. The Court further concludes that Bowers is not entitled to a summary judgment based on his assignment argument. However, this does not end the Court's inquiry. The Court now turns to Bowers' argument that the contingency fee agreement gave rise to an equitable lien on the settlement proceeds.

### 3. Whether Bowers Received More Than He Would Have in a Chapter 7

Section 547(b)(5) provides that, for a transfer of property to be an avoidable preference, it must have enabled the creditor-recipient to have received more than it would have received in a hypothetical chapter 7 case if not for the payment. Ordinarily, a payment to a fully secured creditor does not satisfy § 547(b)(5) because that creditor would not receive more than it would otherwise receive in a chapter 7 liquidation upon the sale of its collateral. In this case, Bowers argues that he was fully secured by an equitable lien on the settlement funds and, therefore, did not receive more than he would have in a liquidation. The trustee responds that the equitable lien is avoidable as a preference or otherwise unenforceable due to Bowers' "unclean hands."

In general, prior to settlement or final judgment, a contingency fee agreement is an executory contract under Texas law. *Marre v. U.S.,* 117 F.3d 297, 307 (5th Cir. 1997). The attorney does not receive a legal or equitable interest pursuant to a contingency fee contract until the contingency occurs. *Id.* The contingency occurs as soon as there is a final judgment or settlement. *In re Willis,* 143 B.R. 428, 431 (Bankr. E.D. Tex. 1992).[7] "Once

---

[7] In *Willis*, the contingency had not yet occurred on the petition date, and the trustee did not timely assume the executory contingent fee agreement. Thus, the contingency fee agreement was deemed rejected under § 365 of the Bankruptcy Code. *Id.* at 432. Nonetheless, the bankruptcy court awarded the attorney fees based on the equitable common fund doctrine. *See Knebel v. Capital Nat'l Bank,* 518 S.W.2d 795, 799 (Tex. 1974); *see also Bashara v. Baptist Mem'l Hosp. Sys.,* 685 S.W.2d 307, 310 (Tex. 1985) (applicability of common fund doctrine discussed). In a footnote, the bankruptcy court rejected counsel's argument that the language of the contingency fee agreement effected an assignment of his client's cause of action. *In re Willis*, 143 B.R. at 432 n.4.

the contingency occurs, the attorney has a lien on the judgment or settlement securing his services, and 'an attorney's lien is paramount to the rights of the parties in the suit, and is superior to other liens on the money or property involved, subsequent in point of time.' " *Marre*, 117 F.3d at 308 (citing *Willis*, 143 B.R. at 432). *See also, e.g., Madeksho v. Abraham, Watkins, Nichols & Friend*, 112 S.W.3d 679, 689 (Tex. App. ─ Houston [14th Dist.] 2003, pet. denied) (observing that attorneys who earn a contingency fee are equitable owners of their part of the judgment); *Mo. Pac. R. Co. v. Austin*, 292 F.2d 415, 419 (5th Cir. 1961) ("[A]ttorney's contingent fee... changes from an executory contract to an equitable interest upon performance of the engagement by the recovery of a judgment.").

Both parties cite this Court to *In re Kleckner*, 81 B.R. 464, 467 (Bankr. N.D. Ill. 1988), in their competing motions for summary judgment. In that case, the bankruptcy court avoided an attorney's equitable lien based on an Illinois rule that requires some type of filing to perfect an equitable lien holder's interest against a subsequent judgment creditor. The attorney had not alleged any facts that would indicate that he filed his contingent fee agreement in a court of any jurisdiction until after the chapter 7 case was filed. Thus, the bankruptcy court concluded that his equitable lien did not enjoy priority over the chapter 7 trustee and that the trustee could avoid the lien as a preference and recover the proceeds of a settlement check sent to the attorney on behalf of his client.

In this case, the trustee has not cited this Court to any similar rule that requires the filing of a contingency fee agreement to perfect an attorney's equitable lien under Texas law. Rather, attorneys' liens in Texas are governed by common law. *See generally* 7 TEX. JUR. 3d Attorneys at Law § 282, *Generally* (collecting cases). As previously discussed, after a lawsuit has been finalized through settlement, an attorney who has entered into a

contingency fee agreement with a client has a lien on the judgment or settlement securing the attorney's services under Texas law. *See generally* 7 TEX. JUR. 3d Attorneys at Law § 286, *On Judgments and Settlements* (collecting cases). The lien appears to arise automatically once the contingency occurs. *See Marre*, 117 F.3d at 308 ("Once the contingency occurs, the attorney has a lien on the judgment or settlement securing his services …."). The Court, therefore, concludes that the equitable attorney's lien was not unperfected or avoidable as a matter of law in this case. The Court further concludes that Bowers did not receive more than he would have in a chapter 7 proceeding.

In the alternative, the trustee argues that Bowers should not receive the benefit of an equitable lien on the settlement funds due to his "unclean hands." The trustee suggests that Bowers improperly distributed the settlement funds in defiance of the turnover order in the Thomas case, and he accuses Bowers of fabricating the settlement disbursal form. Assuming Bowers was aware of the turnover order at the time of disbursal, the equitable attorney's lien arose upon the settlement of Pickens' claim, which occurred prior to the entry of the order. Moreover, "unclean hands" is a defense to an equitable claim, not an independent cause of action (such as an action to avoid a lien). *See Bagby Elevator Co., Inc. v. Schindler Elevator Corp.*, 609 F.3d 768, 774 (5th Cir. 2010) ("Texas courts have long held that the affirmative defense of unclean hands is available only in equity.") (citing *Furr v. Hall*, 553 S.W.2d 666, 672 (Tex. Civ. App. — Amarillo 1977)). "Put another way, one who is defending against a claim may invoke unclean hands as a shield against liability, but a plaintiff cannot use the theory as a liability sword." *Gnipp v. Bank of Am. N.A.*, 2016 WL 4810541, at *7 (M.D. Fla. Sept. 14, 2016). *See also, e.g., In re Thorpe*, – B.R. –

(Bankr. E.D. Pa. 2019), 2019 WL 2746540 (Bankr. E.D. Pa. June 28, 2019) (attorney's misconduct did not preclude quantum meruit fee award).

### B. Bowers' Motion for Summary Judgment on the Trustee's Fraudulent Transfer Claim

Bowers seeks a summary judgment denying all the trustee's claims against him, including her fraudulent transfer claim. The trustee contends in her complaint that the "Transfers," which she defines as the deposit of $450,000 into the IOLTA as well as the payments from the IOLTA to Bowers and others, were actually or constructively fraudulent. *See* 11 U.S.C. § 548; TEX. BUS. COM. CODE §§ 24.001 *et. seq*. However, Bowers' briefing (as well as the trustee's briefing) focuses on the trustee's preferential claim. Bowers does not articulate a clear argument for summary judgment on the trustee's fraudulent transfer claim – other than an assertion that he lacked fraudulent intent and his unsuccessful argument, previously discussed, that he had an ownership interest in his client's cause of action. Accordingly, the Court finds and concludes that Bowers failed to establish that the trustee cannot establish her fraudulent transfer claim as a matter of law.

### CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that the chapter 7 trustee's Motion for Partial Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Bowers' Motion for Summary Judgment is **GRANTED IN PART** inasmuch as (1) the deposit of $450,000 into Bowers' IOLTA and his subsequent payment of $112,500 to himself from his IOLTA were not preferential transfers under 11 U.S.C. § 547 and (2) Bowers is not liable for the payments to Pickens, Gary, and Radics Revocable Living Trust under 11 U.S.C. § 550.

**IT IS FURTHER ORDERED** that Bowers' Motion for Summary Judgment is **DENIED** to the extent he requests a summary judgment with respect to the chapter 7 trustee's fraudulent transfer claim.

Signed on 9/27/2019

*Brenda T. Rhoades*   MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE